UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **CURTIS BAKER,** | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No.: 5:21-cv-382-LCB |
| | ) |
| **CITY OF MADISON, ALABAMA,** | ) |
| *et al.*, | ) |
| | ) |
|    Defendant. | ) |

## MEMORANDUM OPINION & ORDER

Curtis Baker has sued Officers Daniel Nunez and Dion Hose and the City of Madison for violating his constitutional right to be free from excessive force. Baker alleges Nunez used excessive force against him when he tased him on the side of the road after Baker refused medical care following a car wreck. He further alleges that Hose should've stopped Nunez from tasing him and that Nunez tased him in accordance with an official Madison City policy.

Before the Court are Hose's (Docs. 8 & 9), Nunez's (Docs. 26 & 27), and Madison's (Docs. 14 & 15) Motions to Dismiss and Briefs in Support. Baker's Complaint, Nunez's and Hose's body camera footage, and the parties' Briefs show that Baker has failed to state a claim upon which relief can be granted against any Defendant. Accordingly, the Defendants' Motions are **GRANTED** and Baker's claims are **DISMISSED WITH PREJUDICE**.

1

## FACTUAL BACKGROUND

Baker alleges the following in his Complaint. He's a Black man and an epileptic. Law enforcement and emergency medical personnel in the Madison area know him and know about his condition. (Doc. 1 at 1). He had a car accident after suffering an epileptic seizure on March 16, 2019. *Id*. Paramedics arrived on the scene shortly after the accident occurred. Baker's friend told paramedics that Baker had suffered a seizure and that he was still in the throes of that seizure. (Doc. 1 at 1, 2, 3). Officer Daniel Nunez arrived shortly after the paramedics. Those paramedics told Nunez that Baker couldn't understand him. (Doc. 1 at 5). Baker's friend advised Nunez and Officer Dion Hose that Baker was having a seizure. (Doc. 1 at 4). Nunez tried to force Baker onto a stretcher paramedics provided. (Doc. 1 at 2). When Baker refused, instead opting to call his mom, Nunez tased him "multiple times." (Doc. 1 at 2). Baker later received a letter from the City of Madison, advising him that the actions taken against him were consistent with municipal policy. (Doc. 1 at 6).

Nunez's and Hose's body camera footage tells a different story.

Their footage confirms that Baker was involved in a car accident on March 16, 2019. Nunez arrived on the scene of Baker's accident at around noon. (Nunez footage at 12:00:27). A passenger who'd been in Baker's car said, as Nunez passed her, that she "was with Curtis . . . I don't know if he had a seizure or what, but he crossed the lane of traffic and rear-ended somebody." *Id*. at 12:01:08.

Paramedics were speaking to Baker when Nunez arrived, and they asked him to sit down on a stretcher they'd provided him so they could examine him. (Nunez footage at 12:01). Baker's friend can be heard on the footage saying to him, "Curtis, man, they're just trying to help you, man." *Id*. at 12:02:52. Baker didn't sit down, and Officer Nunez approached them. *Id*. at 12:03.

Over the next two and a half minutes, Nunez asked Baker to sit on the stretcher for examination a dozen times. Baker didn't. During their interaction, Nunez asked Baker to produce his driver's license. (Nunez footage at 12:03:52). Baker didn't. Instead, he tried to smoke a broken cigarette. *Id.* at 12:04:11. While this was happening, an EMT told Nunez "[t]here's something definitely wrong with [Baker]. I don't know if he's under the influence or if he's a diabetic or had a seizure." *Id*. at 12:05.

After Baker ignored paramedics' requests to sit on the stretcher, they asked him instead to lean against a concrete barrier on the road. (Nunez footage at 12:05:19). Baker didn't. Instead, Baker dug through his pockets, looking for his phone. *Id*. at 12:05:45. A few seconds later, Baker moved away from paramedics and Nunez, shoving Nunez and announcing his intent to "get in [his] motherfucking car." *Id*. at 12:05:57. He then headed towards the driver's seat. *Id*. Nunez tried to stop Baker from getting back in his car, grabbing his arm. But Baker broke free and

3

sat down in the driver's seat. *Id*. at 12:06:28. Nunez then physically removed Baker from the car. *Id*. at 12:06:33

When Nunez got Baker out of the car, Baker shoved him and moved towards him. (Nunez footage at 12:06:33). Nunez then drew his taser and fired it, hitting Baker. *Id*. at 12:06:35. Nunez's footage shows that from 12:06:35 to 12:06:44, Baker fought the taser's charge, moved back toward the driver's seat of his car, and pulled off his hooded sweatshirt. At 12:06:46, Nunez removed his taser's cartridge, loaded a new one, and again pointed it at Baker. Nunez holstered his taser one minute later, not firing it a second time.

After firing his taser, Nunez told Baker at least 14 times to turn around; Baker didn't. Officer Dion Hose arrived on the scene about two minutes after Nunez tased Baker. (Hose footage at 12:08:55). When Baker saw Hose, he called out to him, clearly upset that he'd just been tased. Hose engaged Baker (who was resisting Nunez) and, with the help of a third officer, subdued him. *Id*. At 12:09. During that time, Hose's body camera fell off. *Id*. at 12:09:22. However, the camera kept rolling and recorded officers instructing Baker to put his hands behind his back and telling him to stop resisting. Ultimately, Baker's mother came to the scene, explained his medical condition, and Baker was allowed to leave.

4

## LEGAL STANDARD

The Defendants moved to dismiss Baker's Complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure. That Rule requires courts to construe the complaint in the light most favorable to the plaintiff and accept all well-pled facts alleged in the complaint as true. *See* FED. R. CIV. P. 12(6). To withstand these Motions to Dismiss, Baker must've pled enough facts to state a claim to relief that's facially plausible–to nudge his claims across the line from conceivable to plausible. *See Iqbal*, 556 U.S. 662, 668.

The Court is generally precluded from considering matters outside the pleadings when determining a claim's plausibility on a 12(b)(6) motion. *See Bickley v. Caremark RX Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006). There is, however, an exception to that rule. If a plaintiff refers to an exhibit in his complaint, that exhibit is central to his claims, its contents aren't disputed, and the defendant attaches it to its motion, the Court may consider it. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284–85 (11th Cir. 2007). That's the situation here. Accordingly, the Court will consider the body camera footage Defendants submitted. *See McDowell v. Gonzalez*, 820 Fed. App'x. 989, 992 (11th Cir. 2020) (district court properly considered officer's body camera footage on a motion to dismiss); *Nelson v. Lott*, 330 F. Supp. 3d 1314 (N.D. Ala. 2018) (considering body camera footage on a motion to dismiss). Finally, "where the exhibits accompanying or attacking the

complaint contradict a plaintiff's allegations, the Court is not required to (and does not) treat such allegations as true." *Williams v. Fannie Mae*, 2020 U.S. Dist. LEXIS 225620, at *2 n.2 (S.D. Ala. Dec. 2. 2020) (collecting authorities).

## DISCUSSION

### I.  Baker's failure to intervene claim against Officer Hose fails.[1]

As noted in the Defendants' Briefs (*see, e.g.*, Doc. 15 at 11–12), "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Hadles v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (cleaned up). "But it must also be true that the non-intervening officer was in a position to intervene yet failed to do so." *Id.* (citing *Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000)). Taken together, these rules contemplate that an officer must generally be on-the-scene of a purported constitutional violation, *actually see it*, and still do nothing about it for a failure to intervene claim to stand. *See Militello v. Sheriff of the Broward Sheriff's Office*, 684 Fed. App'x. 809, 815 (11th Cir. 2017) (collecting authorities).

Baker alleges that Hose failed to intervene in Nunez's use of excessive force: that Hose knew Nunez "was about to use the taser on Baker" and Hose didn't take

---

[1] Defendants' Motions overlap a bit (i.e., each Motion contains relevant argument for each Defendant). The Court addresses the Motions in the order in which they were filed.

6

any steps to stop Nunez from tasing him "even after Officer Hose[2] had actually used the taser on Baker the first time." (Doc.1 at 8) (emphasis removed).

In their Briefs, Defendants point out that Hose wasn't on-the-scene when Nunez tased Baker. He arrived two minutes later. His absence perpetuated the physical impossibility of him seeing Nunez tase Baker. Since he couldn't have even seen Nunez tase Baker, he certainly couldn't have seen it and done nothing about it. Therefore, they contend, Baker's failure to intervene claim against Hose can't stand. (*See, e.g.*, Doc. 15 at 11–13). Baker doesn't rebut Hose's contentions in his Opposition. (*See* Doc. 21).

The undisputed video footage shows Baker's claim against Hose is baseless. Hose wasn't there when Nunez tased Baker. That same footage (and Hose's absence) shows that he couldn't have seen and then done nothing about Nunez tasing Baker. Accordingly, Baker's claim against Hose fails and it's dismissed with prejudice.

## II.  Baker's custom or policy claim against Madison fails.

Generally, a municipality can't be held liable for its employees' acts under a *respondeat superior* theory. *Real v. Perry*, 810 Fed. App'x. 776, 780 (11th Cir. 2020) (quoting *Davis v. Dekalb Cty. Sch. Dist.*, 233 F.3d 1367, 1375 (11th Cir. 2000)). "A municipality may only be held liable for the actions of law enforcement officers

---

[2] The Court believes this was a typographical error and won't hold it against Baker. To apply this contention as written to the facts would lead to an absurd result. Regardless of interpretation, however, the result remains the same: Baker's claim against Hose fails.

when official policy or custom causes the constitutional violations." *Id.* (citing *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 694 (1978)). "Thus, to establish municipal liability a plaintiff must (1) demonstrate that his constitutional rights were violated, and (2) identify a municipal custom or policy that (3) caused the violation." *Id.* (citing *McDowell v. Brown,* 392 F.3d 1283, 1289-90 (11th Cir. 2004)).

Baker contends that "[t]he acts described in this Complaint were the result of the policy of Madison, Alabama, according to the admission of the City" and accordingly, "Madison must answer in damages for the injuries proximately caused by the acts described[.]" (Doc.1 at 8). Ultimately, Baker alleges that the Madison City custom or policy instructs officers to "us[e] a tazer [sic] on [] harmless Black m[e]n having [] medical emergenc[ies] simply because [they] . . . refuse[] to accept [] medical assistance that medical personnel [were offering]." (Doc. 1 at 6, para. 48).

Madison contends that the reasons Baker's claim here fails are legion. First, Madison argues that Baker's allegations are merely threadbare recitals of his cause of action's elements, failing to satisfy Rule 8(a)'s pleading standard. (Doc. 15 at 8). Second, Madison contends that Baker's claim is fundamentally flawed because he cites no specific policy that requires Madison Police to tase Black men having medical emergencies; nor has he alleged facts that plausibly establish a policy that caused Nunez to tase him. (Doc. 15 at 9). Madison also contends that Baker's

allegations merely conflate the City's determination that the officers acted in conformity with municipal policy with the City having a specific policy that directs officers to tase Black men having medical emergencies. *Id*. Finally, Madison argues that any reliance upon a ratification theory fails because Madison "ratified" Nunez's actions *after* he'd acted. (Doc. 15 at 11).

In Opposition, Baker seems to rely entirely upon a ratification theory. (Doc. 21 at 3). He also cites *Helm v. City of Rainbow City,* 989 F.2d 1265 (11th Cir. 2021) for the proposition that "using a taser on a person who is having a seizure merely because that person disobeys police commands violates clearly established protections afforded by the Fourth Amendment." (Doc. 21 at 3). Madison addresses these and other issues in its Reply.

First, Baker didn't oppose Madison's argument that he hasn't satisfied Rule 8(a)'s pleading standard. He simply stated that he "can allege additional facts about the City of Madison's policy if necessary[.]" (Doc. 21 at 3). This fails to rebut, head-on, Madison's argument, as required. For this reason, the Court finds Madison's Motion to Dismiss in accordance with this ground unopposed, Baker's claim abandoned, and dismissal appropriate. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (finding that a party's failure to brief and argue an issue before the district court is grounds for declaring it abandoned); *see also Jackson v. City of Homewood,* 2013 WL 2352430,

at *5 (N.D. Ala. May 29, 2013) (citing *Coal. for the Abolition of Marijuana Prohibition, supra,* and finding abandonment where plaintiff didn't respond to the city's argument on a motion to dismiss).

Alternatively, the Court finds that Baker's ratification theory–the only theory he's earnestly pursued in Opposition–fails. There, Baker contends that he's plausibly alleged an actionable custom or policy because "[t]he City stated the conduct was in accordance with policy and made that statement in writing. This is not mere ratification, but the result of a presumably professional, dispassionate investigation by a police department[.]" (Doc. 21 at 3–4).[3] The Court is unpersuaded.

> The Eleventh Circuit has recognized that
>
> anyone who, under color of state law, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015) (cleaned up). However,

> when plaintiffs are relying not on a pattern of unconstitutional conduct, but on a single incident, they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision

---

[3] Baker also passingly refers to an "assault against at least one other non-White person" by the Madison Police Department to show a custom or policy. (Doc. 21 at 4). This allegation doesn't appear in his Complaint. To the extent that this was an attempt to amend his Complaint via briefing, it fails. *See Pruitt v. Charter Commc'ns, Inc.*, 2020 WL 8093584, at *4 (N.D. Ala. Dec. 18, 2020) (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

> and agreed with both the decision and the decision's basis before a court can hold the government liable on a ratification theory.

*Id.* at 1296 (cleaned up); *see also Colardo-Keen v. Rockdale Cty., Georgia*, 775 Fed. App'x. 555, 572 n. 8 (11th Cir. 2019). It's clear that Baker alleged only a single instance of officer conduct to support his claim. And it's clear that Madison didn't have an opportunity to review and agree with Nunez's decision to tase Baker before it happened. The absence of this prior ratification dooms Baker's claim. Accordingly, Baker's claim against Madison fails and is dismissed with prejudice.

### III.  Baker's excessive force claim against Nunez fails.

Finally, Baker asserts an excessive force claim against Nunez. (*See* Doc. 1). Nunez contends dismissal is appropriate because his force wasn't excessive given the circumstances and because he's entitled to qualified immunity. (Doc. 26 at 4). In Opposition, Baker contends that two recent Eleventh Circuit opinions show that Nunez's force wasn't proportional to the purported threat he presented. (*See* Doc. 30 at 1–3). Nunez addresses this and other arguments in his Reply.

At the parties' conference on February 2, 2022, Baker's counsel argued that Nunez's force against Baker was excessive and that Court shouldn't grant Nunez's Motion to Dismiss. The Court disagrees.

#### A. Nunez is entitled to qualified immunity. Baker hasn't shown that one of his clearly established constitutional rights was violated.

Qualified immunity protects government officials engaged in discretionary functions and sued in their individual capacities unless they violate clearly

established federal statutory or constitutional rights that a reasonable person would have known. *Nelson v. Lott*, 330 F. Supp. 3d 1314, 1327 (N.D. Ala. 2018) (collecting authorities). This defense tries to "strike a balance between 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Id*. (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "[It] allows [law enforcement] to carry out their discretionary duties without the fear of personal liability or harassing litigation, thereby protecting from suit all but the plainly incompetent or those who knowingly violate the law." *Id*. (collecting authorities and cleaned up).

Qualified immunity doesn't protect a law enforcement officer who knew or reasonably should've known that his action (taken within his sphere of official responsibility) would violate a plaintiff's constitutional rights. Nor does it protect an officer who acted with the malicious intent to deprive the plaintiff's constitutional rights or inflict another injury. *Id*. (collecting authorities).

A law enforcement officer need only show that he was acting within the scope of his discretionary authority when an allegedly wrongful act occurred to trigger qualified immunity's protection. *Id*. (collecting authorities). If he does this, the burden falls to the plaintiff to show that his rights were violated and that such a right

was clearly established at the time of the purported violation. *Id*. at 1238 (collecting authorities). Nunez has done this.

Now the onus is Baker's to show that Nunez's conduct violated his constitutional right to be free from excessive force and that such a right was clearly established. When confronted with a qualified immunity issue, a district court may address these prongs in sequential or reverse order or address only one of them. *See Edwards v. Mashego*, 2020 WL 1847866 at *4 (N.D. Ala. April 13, 2020). "Indeed, pursuant to the Supreme Court's decision in *Pearson v. Callahan*, a court is permitted to exercise its sound discretion in deciding which prong of the qualified immunity defense to address first." *Id*. (cleaned up and collecting authorities).

Baker tries to show that his right to be free from Nunez's force was clearly established through a direct comparison of his case's facts to those in *Bradley v. Benton*, 2021 WL 3782003 (11th Cir. Aug. 26, 2021) and *Helm*. While these cases are easily distinguishable from Baker's for the reasons cited in Nunez's Brief (*see* Doc. 31 at 6–9), they fail to show that Nunez violated Baker's clearly established constitutional right because they both post-date Nunez's actions. *See Crocker v. Beatty*, 995 F.3d 1232, 1241 n.6 (11th Cir. 2021) (citing *Brosseau v. Haugen*, 543 U.S. at 194, 200 n.4 (2004)).[4] Because Baker can't show that his right to be free

---

[4] While *Crocker* shows that a plaintiff could demonstrate a right was clearly established in three ways, *See Crocker*, 995 F.3d at 1240, it's clear to the Court that Baker only relies upon the first: showing that case law with indistinguishable facts from his own. The Court won't make Baker's

from Nunez's actions was clearly established, his claim fails and dismissal with prejudice is appropriate. *See Edwards*, 2020 WL 1847866, at *4 (N.D. Ala. Apr. 13, 2020) (collecting authorities and noting that a district court can address only one prong of the qualified immunity analysis).

### B. Alternatively, Baker hasn't shown Nunez's force was excessive.

When assessing whether Nunez's actions violated Baker's constitutional rights, the Court must ask whether his actions were objectively reasonable in light of the facts and circumstances of the encounter. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). This requires the Court to evaluate several factors including: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the public or the officer's safety; (3) and whether he was actively resisting arrest or attempting to evade arrest by flight. *See Graham*. 490 U.S. at 396. This case's facts fit squarely into that framework.

First, it's undisputed that Baker had just been involved in a car accident; he'd just driven his car into the rear-end of another. On-scene paramedics related their concern to Nunez that Baker might've been under the influence. Body camera footage shows that Baker either seemed to ignore, and in other cases, he flatly refused paramedics' and Nunez's requests, becoming confrontational with the latter. Under these facts, Nunez certainly had a reasonable suspicion to briefly detain Baker

---

arguments for him regarding the other means by which he could show his right was clearly established. *See Smith v. Laddin*, 424 B.R. 529, 536 n. 4 (N.D. Ala. 2010) (collecting authorities).

and investigate a possible Ala. Code § 32-5A-191 violation for driving under the influence. Second, while Baker hotly protests Nunez's contentions about him posing a threat to Nunez and the public, the Court finds Baker's position untenable. The indisputable body camera footage shows that Baker had just driven into the rear-end of another car, he was still on an active roadway, he physically confronted (shoved) Nunez, cursed at him, got back into the driver's seat of his car without undergoing any kind of assessment by medical professionals, and then shoved Nunez again when Nunez pulled him from the car. Baker's aggressive and non-compliant behavior under these circumstances would lead any reasonable officer to believe that some force was necessary to curtail any danger Baker presented. Finally, Baker actively resisted Nunez's efforts to prevent him from getting into his car. And, as just noted, Baker had already shown he was willing to physically engage with Nunez given his earlier shove. In fact, the video footage shows Baker moved toward Nunez after Nunez pulled him from the car.

When confronted with the above, Baker's counsel offered during the telephone conference that Nunez could've "let [Baker's] medical crisis pass" or "let the paramedics handle it," and Nunez's failure to follow either course of action–instead tasing Baker–amounted to excessive force. Those proposals are illogical.

As for letting Baker's medical crisis pass, that simply wasn't an option. Baker was heading right back to his car's driver's seat. Was Nunez to simply let a man

15

who'd just been in a car accident (and could reasonably be suspected of being under the influence) simply get back into the driver's seat of his car on an active roadway hoping whatever was happening would pass? Consider the catastrophes that could've followed if Nunez had let Baker get back into his car and then drive away without further investigation given the facts discussed in this Opinion. As to the contention that Nunez should've let paramedics handle the situation, the Court is perplexed. Baker had already refused their care and failed to comply with their requests.

In short, under the facts described as above and as captured on camera, it's clear that Nunez's decision to tase Baker was reasonable and that this force was proportional to the threat he posed.

### C. Baker's discovery request is unavailing.

During the parties' conference, Baker's counsel contended that a witness, David Williams, told paramedics and police that Baker was having a seizure and that he didn't understand what they were saying to him. Discovery on this issue, he maintained, will show that Nunez knew Baker was having a seizure and that Baker couldn't understand him, showing that the force Nunez used was excessive under the circumstances.

First, the Court notes that Baker alleged that a witness told paramedics and law enforcement that Baker couldn't understand them in his Complaint. (*See* Doc. 1

at 1–2). Counsel's contention that discovery is required to prove this allegation isn't sound. To the extent Baker's allegations weren't directly controverted by the video evidence, they stand, and the Court accepts them as true. Indeed, as noted above, one of Baker's passengers can be heard saying that she "was with Curtis . . . I don't know if he had a seizure or what, but he crossed the lane of traffic and rear-ended somebody" as he passed her. (Nunez footage at 12:01:08).

To the extent that Baker maintains that discovery on this issue is warranted to show that Nunez *knew* that Baker didn't understand him because he was having a seizure, the Court remains unpersuaded. As the footage clearly shows, Baker simply didn't comply with any request or command and he responded, sometimes physically, to Nunez. Whether Baker could understand Nunez in this instance is immaterial. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1241 (11th Cir. 2003) (appellant's argument that he couldn't hear law enforcement amounted to an immaterial fact); *Duncan v. Wade*, 851 Fed. App'x. 959, 962 (11th Cir. 2021) (officer's reasonable but mistaken belief that the appellant heard but refused to follow his instructions wasn't required to "wait and hope for the best" in a "tense, uncertain, and rapidly evolving" series of events that started as a routine traffic stop). In short, this argument doesn't save his claim.

But this talk of footage leads the Court to Baker's second discovery contention: the working order of Nunez's body camera. Here, too, the Court finds

Baker's position lacking. The body camera footage in the record gives no indication that it didn't pick up any audio. In fact when Nunez went to speak to Baker early in their interaction, a passenger who'd been in Baker's car can be heard from a distance telling Baker to sit down because paramedics were simply trying to help him. (*See* Nunez footage at 12:02:52). Moreover, Baker didn't even allege that Nunez's body camera wasn't working properly. This contention first arose in Baker's Opposition, and it's only an argument. *Compare* Doc. 1 *with* Doc. 30 at 2. An argument in opposition isn't an allegation. *See Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not, however, proper to assume that [the petitioner] can prove facts that it has not alleged or that the defendants have violated . . . [the] laws in ways that have not been alleged."). And Baker can't back himself into a plausibly pled claim through discovery. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563 n. 8 (2007) ("[B]efore proceeding to discovery, a complaint must allege facts suggestive of illegal conduct.").

## CONCLUSION

Based on the foregoing, the Defendants' Motions to Dismiss (Docs. 8, 14, and 26) are **GRANTED** and Baker's Complaint is **DISMISSED WITH PREJUDICE**. The Clerk of Court is directed to **CLOSE** this case.

**DONE** and **ORDERED** this February 8, 2022.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE